**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

September 30, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Matthew B. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-3038-DRM

Dear Counsel:

On September 15, 2025, Plaintiff Matthew B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 11) and the parties' briefs (ECF Nos. 15 and 17). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on May 23, 2022, alleging a disability onset of May 25, 2018. Tr. 92. Plaintiff's claims were denied initially and on reconsideration. Tr. 92. On September 24, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 92. Following the hearing, on November 24, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 et seq., during the relevant time frame. Tr. 102. On January 7, 2025, the Appeals Council vacated the hearing decision and remanded the case to the ALJ to consider "material evidence that was not entered into the record." Tr. 107-112, 116. An ALJ held a second hearing on July 1, 2025. Tr. 113-136. Following the second hearing, on July 14, 2025, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 et seq., during the relevant time frame. Tr. 131. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's second decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

§§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of May 25, 2018 through his date last insured of December 31, 2023." Tr. 119. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "sarcoidosis with cardiomyopathy, obesity, post-traumatic stress disorder (PTSD), obsessive-compulsive disorder (OCD), generalized anxiety disorder, depressive disorder, and attention-deficit hyperactivity disorder (ADHD)." Tr. 119. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "hypertension" and "sleep apnea." Tr. 119. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 119. The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He can have no exposure to work in high, exposed areas and moving mechanical parts. The claimant can have occasional exposure to wetness, humidity, extreme cold, extreme heat, and vibration. He can understand, remember, and carry out simple instructions. He can perform work without a specific production rate pace such as an assembly line or hourly production quotas. The claimant can make simple work-related decisions. He can occasionally deal with changes in a routine work setting. The claimant can occasionally interact with supervisors, coworkers, and the public.

Tr. 121-122. At steps four and five, the ALJ determined that Plaintiff was unable to perform past relevant work as a police officer, but could perform other jobs that existed in significant numbers in the national economy such as an inspector, a machine attendant, and a final assembler. Tr. 129-130. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 131.

## III. <u>LEGAL STANDARD</u>

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla of evidence but may be somewhat less than a

preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff argues that "the ALJ improperly discounted the opinions of Dr. Kadakkal and Mrs. Anderson." ECF No. 15-1 at 18. Defendant counters that the ALJ properly considered the opinions of each of those treating providers. ECF No. 17 at 6.

When evaluating medical opinions in claims filed on or after March 27, 2017[1], an ALJ must, as the Fourth Circuit recently explained:

> "evaluate the persuasiveness" of that evidence by applying a five-factor test, 20 C.F.R. § 404.1520c(a); *see also id.* § 404.1520c(b)(2), (c). The factors are: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c)(1)-(5).
>
> Although the Social Security Administration must ultimately "stat[e] the ... reason or reasons upon which" its final decision "is based," 42 U.S.C. § 405(b)(1), an ALJ need not explain in detail how he "evaluate[d] the persuasiveness," 20 C.F.R. § 404.1520c(a), of each piece of evidence in the record. The ALJ only needs to say, for each "medical source" in the record, how each of the first two factors applies—that is, whether that source's conclusions are supportable by medical evidence and consistent with the rest of the record. *Id.* § 404.1520c(b)(1), -(2). An ALJ must consider all five factors, but need not discuss any save the first two unless those other factors are dispositive. *Id.* § 404.1520c(b)(3); *see* 42 U.S.C. § 405(b)(1).

*Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604-05 (4th Cir. 2025); *see also Calhoun v. Comm'r of Soc. Sec.*, __ F.4th __, 2026 WL 2602326, at *4 (4th Cir. Sept. 3, 2026).

The relevant regulations define these first two factors as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

---

[1] *See Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1), -(2).

"Supportability is the degree to which a provider supports [his or her] opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)).

This Court has noted that supportability and consistency must be considered independently. *See Duane H. v. Kijakazi*, No. JMC-20-3673, 2021 WL 8314949, at *3 (D. Md. Dec. 29, 2021) (recognizing that to consider supportability "in conjunction with" consistency "would conflate the nuances of those factors."). This flows from their differing natures: "Supportability looks inward, asking how well a source's own 'objective medical evidence and supporting explanations' sustain its opinion. Consistency looks outward, asking how well that opinion accords with 'the evidence from other medical sources and nonmedical sources' in the record." *Calhoun*, 2026 WL 2602326, at *4 (citations omitted). Because of their independence, "[t]he two [inquiries] need not rise or fall together: A well-supported opinion may clash with the broader record, and a poorly supported one may fit it. But the inquiries can overlap. When an opinion's supporting explanation rests on the claimant's history, both inquiries will look to the record." *Id.*

**<u>The ALJ Did Not Err in Evaluating the Opinion of Dr. Kadakkal</u>**

In discussing Dr. Kadakkal's opinion, the ALJ first detailed the abilities and limitations that Dr. Kadakkal had opined Plaintiff possessed, as well as the occupational restrictions he required:

> Dr. Kadakkal, one of the claimant's cardiologists, stated in August 2023 that the claimant can walk four blocks, stand and walk for two hours a day, and sit for about four hours a day. He indicated that the claimant can lift and carry twenty pounds occasionally but less than ten pounds frequently and can occasionally twist, stoop, crouch, or climb. Dr. Kadakkal opined that the claimant must avoid all exposure to cigarette smoke, fumes, odors, chemicals, or dust; must avoid even moderate exposure to solvents and soldering fluxes; and must avoid concentrated exposure to temperature extremes and high humidity. Dr. Kadakkal explained that the claimant can perform low stress work but would require rest breaks of fifteen minutes every two hours, would be off task fifteen percent of the workday, and would miss two days of work a month (Exhibit 11F).

Tr. 126.

The ALJ then analyzed Dr. Kadakkal's opinion as follows:

> Dr. Kadakkal's opinion is not fully persuasive. He did refer to reduced ejection fraction and abnormal myocardial uptake as well as symptoms of palpitation, weakness, arrhythmia, and exertional dyspnea, in support of this opinion (Exhibit 11F/ 1). Dr. Kadakkal's own notes from July 2023, by contrast, indicate occasional palpitations but no exertional symptoms and no defibrillator shocks since 2022, failing to support an inability to sit [or] the degree of off-task behavior, absenteeism, and additional breaks that he describes (Exhibit 5F/ 85). Imaging of the claimant's heart does include findings of hypokinesis and diminished ejection fraction consistent with limited ability to stand and perform postural activities like crouching and climbing (Exhibit 3F/ 225-26). However, cardiopulmonary stress testing in June 2023 also suggested minimal cardiopulmonary limitations, including lung capacity at or above the predicted values, inconsistent with an inability to lift ten pounds frequently, walk more than four blocks at a time, tolerate even minimal respiratory irritants, or work without unscheduled breaks (Exhibit 12F/ 18-19). Moreover, while Dr. Kadakkal cited to irritability in support of his opinion regarding mental limitations, he did not specifically define what constitutes a "low stress" work environment (Exhibit 11F/ 2). Additionally, Dr. Kadakkal is not a mental health specialist, limiting the persuasive value of his assessment of mental limitations. The evidence does nonetheless indicate chronic anxiety consistent with some limitations in tolerating stress such as changes or rapid pace demands (Exhibit 1F/ 18; Exhibit 2F/ 55, 60). Therefore, while Dr. Kadakkal's opinion is persuasive in describing limitations in standing and postural activities but is not persuasive in describing a need for breaks or absences; limitations in lifting, walking, and sitting; or environmental limitations. The undersigned does find Dr. Kadakkal's opinion regarding "low stress" work persuasive but has interpreted that undefined term as representing limitations in decisionmaking, interaction, work pace, and workplace changes described above.

Tr. 126.

As to supportability, the ALJ described Dr. Kadakkal's observations and expressly noted that the doctor referred to some of Plaintiff's diagnoses as well as some of his symptoms "in support of this opinion." Tr. 126 (citing 11F/1). The ALJ also cited to Dr. Kadakkal's treatment notes from July 2023 and described the information collected in that visit and noted that the lack of exertional symptoms and no defibrillator shocks since 2022 "fail[ed] to support" some of the limitations and restrictions Dr. Kadakkal had opined in "off-task behavior, absenteeism, and additional breaks." Tr. 126 (citing 5F/ 85). As to consistency, the ALJ cited to two specific tests. Tr. 126 (citing 3F / 225-226; 12F/ 18-19). One test, March 2023 imaging of Plaintiff's heart, the ALJ determined was consistent with some limited ability, and therefore restrictions, as to standing, crouching and climbing. Tr. 126, 987-988. The other test, a June 2023 cardiopulmonary stress test, the ALJ determined produced results which were inconsistent with inability, and therefore restrictions, on lifting ten pounds, walking more than four blocks, tolerating irritants, and

unscheduled breaks. Tr. 126, 1682-1683. While the ALJ noted that Dr. Kadakkal opined on Plaintiff's mental limitations, although "Dr. Kadakkal is not a mental health specialist," Tr. 126, the ALJ then cited to two exhibits which "nonetheless" indicated limitations as to stress, change and pace. Tr. 126 (citing 1F/ 18, 2F/ 55, 60). The ALJ then assessed as persuasive restrictions that were supported by the record as to standing an postural activities, and assessed as not persuasive those restrictions that were not supported by the record as to absences, breaks, limitations on lifting, walking and sitting, and environmental restrictions. Tr. 126.

The ALJ cited to records relevant to Dr. Kadakkal's assessment to evaluate the consistency between these records and Dr. Kadakkal's conclusions. Tr. 126. Further, the ALJ cited to records with specificity and those records were "not so voluminous as to render these citations meaningless." *Michael C. v. Kijakazi*, No. BAH-22-0129, 2022 WL 13945281, at *4 (D. Md. Oct. 24, 2022). "To the contrary, the records are short enough that [the Court is] able to review the ALJ's decision and the records themselves and find that the record contains 'sufficien[t] evidence' to support the ALJ's determinations." *Id*. (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). This analysis comports with the supportability and consistency requirements of 20 C.F.R. § 404.1520c(c)(1)-(2).

Plaintiff's arguments to the contrary are not convincing. Plaintiff argues objective evidence supports Dr. Kadakkal's opinion. ECF No. 15-1 at 19. In support, Plaintiff states, "[Plaintiff] underwent defibrillator implantation surgery in 2018 and experienced numerous pacing events and VT episodes resulting in ICD shock thereafter." ECF No. 15-1 at 19. This statement that Plaintiff has a history of episodes of ICD shocks is not at odds with the evidence considered by the ALJ in evaluating Dr. Kadakkal's opinion in which the ALJ noters Plaintiff cardiac history and adds that Plaintiff has had "no defibrillator shocks since 2022." Tr. 126. The ALJ considered, among others, Exhibit 5F / 85, which are Dr. Kadakkal's treatment notes from an appointment in July 2023, and which recounts Plaintiff's cardiac history, including some cardiac tests results back to 2017 and other tests as recent as April 2023, and notes both that Plaintiff "reports no ICD shocks this year," and that Plaintiff "denies any ICD shocks since 2022."[2] Tr. 1553-1554.

Plaintiff also states, "[m]ultiple echocardiograms and PETs revealed no improvement in [Plaintff's] cardiac condition, specifically new and increasing inflammatory changes and an

[2] This same portion of the exhibit includes the additional information the ALJ determined supported some restrictions opined by Dr. Kadakkal and undermined the persuasiveness of others. The same page discusses some of Plaintiff's tests results back to 2017 and other tests through to "recent PET imaging" and a "repeat echo" in April 2023, and notes both that Plaintiff "reports no ICD shocks this year," and "leads a highly active lifestyle with no limitations or heart failure symptoms," and that he has "issues of severe insomnia, anxiety and irritability." Tr. 1554. On the following page, the treatment notes provide that Plaintiff "denies any ICD shocks since 2022," "continues to feel well from a heart failure standing point," "that he exercises daily without limitations, "continues to bike avidly, lift weights, and remain highly active without any limiting chest pain, dyspnea or near syncope," that "he occasionally notes some palpitations," and has "less anxiety since coming off prednisone." Tr. 1543-1554.

ejection fraction as low as 33%." ECF No. 15-1 at 19. Again, information about both these topics is included in the ALJ's discussion and in the exhibits to which the ALJ cites. Tr. 126 ("Imaging of the claimant's heart does include findings of hypokinesis and diminished ejection fraction consistent with limited ability to stand and perform postural activities like crouching and climbing (Exhibit 3F/ 225-26)."). Of note, the ejection fraction noted in this exhibit is 35-40%, the reviewer notes the test showed "moderate global hypokinesis," and "[c]ompared to prior study of 1/7/22, there is no significant change." Tr. 987-988.

Plaintiff also states that "medications were constantly being adjusted," and that "[t]he subjective evidence is equally overwhelming," noting Plaintiff's reports to providers and testimony at the oral hearing of "chronic fatigue, shortness of breath, lightheadedness, dizziness, heart palpations, insomnia, anxiety, and PTSD." ECF No. 15-1 at 19. In addition to the treatment notes and other exhibits already discussed, to which the ALJ cited and which contained Plaintiff's reports to providers, the ALJ expressly discussed why Dr. Kadakkal's opinions regarding Plaintiff's mental limitations were of limited persuasive value, but then cited to multiple other pages of the record to support some limitations, including treatment notes of psychiatric provider Carolyn Anderson, CRNP. Tr. 126 ("The evidence does nonetheless indicate chronic anxiety consistent with some limitations in tolerating stress such as changes or rapid pace demands (Exhibit 1F/ 18; Exhibit 2F/ 55, 60).").

Moreover, even assuming that reasonable minds could differ between the ALJ's and Plaintiff's interpretations of the evidence, when an ALJ "appl[ies] the correct factors" in evaluating the opinions of medical sources, "we won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake." *Drumgold*, 144 F.4th at 605 (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

**<u>The ALJ Did Not Err in Evaluating the Opinion of Caroline Anderson</u>**

The ALJ's analysis of the opinion of Caroline Anderson, CRNP, consists of the following:

> Caroline Anderson, CRNP, the claimant's psychiatric provider, stated in June 2024 that the claimant has extreme limitation in sustaining attention and concentration and completing a normal workday and marked limitation in responding to changes, setting independent goals, and carrying out detailed instructions but otherwise has no more than slight limitations. She added that the claimant would miss four or more days of work a month (Exhibit 10F). Ms. Anderson supported this opinion with references to frequent anxiety and PTSD symptoms as well as observations of difficulty concentrating and making decisions (Exhibit 10F/ 1-2). However, while Ms. Anderson's notes often indicate complaints of concentration impairment and anxiety, the claimant's observed cognition has typically been normal and his insight and judgment adequate, inconsistent with the extreme attention deficits and marked issues responding to changes or setting goals that she describes (Exhibit 2F/ 72-73, 214-16). The claimant had also acknowledged improvements in the ability to leave the house in October 2023 following setbacks after losing his therapist, failing to support the degree of absenteeism Ms. Anderson describes (Exhibit 16F/ 11). The

> claimant had also acknowledged being able to adapt to small changes in December 2023, inconsistent with Ms. Anderson's opinion of marked limitation (Exhibit 8E/ 7). Dr. Taller had also indicated that the claimant showed good judgment, intact capacity to spell in reverse, and no flight of ideas, inconsistent with an extreme deficit in attention and concentration or a marked impairment in setting basic goals (Exhibit 8F/ 3-4). Thus, Ms. Anderson's opinion is not persuasive.

Tr. 127.

Plaintiff argues that "[w]ith respect to supportability and consistency, Buchan submits that Ms. Anderson's treatment notes do support her marked and extreme limitations as well as the medical evidence from other sources and Buchan's own testimony." ECF No. 15-1 at 20.

As to supportability, the ALJ described Anderson's findings, conclusions, and opined limitations and restrictions. Tr. 127. The ALJ expressly noted that, "Anderson supported this opinion with references to frequent anxiety and PTSD symptoms as well as observations of difficulty concentrating and making decisions (Exhibit 10F/ 1-2)." Tr. 127. As to consistency, the ALJ cited to Anderson's treatment notes to evaluate the consistency between these records and Anderson's conclusions. Tr. 127 (citing 2F/ 72-73, Anderson's treatment notes from February 16, 2023, Tr. 582-584, and 2F / 214-216, Anderson's treatment notes from November 22, 2022, Tr. 724-727). The ALJ also discussed Exhibit 16F / 11, Anderson's treatment notes from October 18, 2023, Tr. 1935, in which Plaintiff reports that he continues to see improvement in working through his anxiety about leaving the house. Tr. 127. All three of these records note that Plaintiff had normal speech, normal motor activity, intact memory, adequate insight and judgment, cooperative behavior, and was alert and oriented, Tr. 583-584, 724-726, 1934-1936, which the ALJ determined was inconsistent with the "extreme deficits" and "marked issues" Anderson describes. Tr. 127. Finally, the ALJ cites to Plaintiff's self-reported information in his "Function Report – Adult" from December 2023, stating that small changes to his routine are "okay," Tr. 405, and a report from Dr. Taller that noted Plaintiff showed "good judgment" and "intact capacity" on March 21, 2024, Tr. 1638-1639, to find these reports inconsistent with the limitations Anderson opined. Tr. 127 (citing 8E/ 7, 8F/ 3-4). Here also, the ALJ cites to records that are short enough and specific enough to allow the Court to "review the ALJ's decision and the records themselves and find that the record contains 'sufficien[t] evidence' to support the ALJ's determinations." *Michael C.*, 2022 WL 13945281 at *4. This analysis comports with the supportability and consistency requirements of 20 C.F.R. § 404.1520c(c)(1)-(2).

Plaintiff argues that Anderson's "treatment notes do support her marked and extreme limitations," noting his own "consistent" statements and medication regimes. ECF No. 15-1 at 20. However, the ALJ cited to, and therefore considered in the analysis, records that included this information. As discussed above, the ALJ cited to multiple sets of Anderson's treatment notes which contained Plaintiff's reports to Anderson and his medications lists, as well as the notes of Dr. Taller and Plaintiff's Function Report-Adult. Plaintiff does not identify any relevant medical records or evidence that the ALJ failed to consider.

The ALJ assessed the supportability and consistency of both providers' opinions, and the ALJ's evaluations comport with the SSA's regulatory framework. See 20 C.F.R. § 404.1520c.

## V. <u>CONCLUSION</u>

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge